*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEFFREY LAMONT GLENN,

Defendant-Appellant.

UNPUBLISHED
July 08, 2025
11:03 AM

No. 371666
Genesee Circuit Court
LC No. 2022-050746-FH

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

Defendant, Jeffrey Lamont Glenn, was convicted following a jury trial of one count of second-degree arson, MCL 750.73(1), and one count of third-degree killing or torture of an animal, MCL 750.50b(5). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 156 to 360 months' imprisonment for his arson conviction and a consecutive term of 46 to 180 months' imprisonment for his conviction of killing or torturing an animal. In this appeal by right, defendant asserts that the trial abused its discretion by imposing the sentences consecutively, rather than concurrently. We affirm.

## I. BACKGROUND

On August 22, 2022, defendant was at the home of an acquaintance, Taylor Edwards, when Edwards drove off in defendant's vehicle without defendant's permission. A neighbor's doorbell camera recorded defendant removing Edwards's moped from the residence before leaving to use a local liquor store's phone. Defendant called Edwards, who refused to return the vehicle, and defendant threatened "to kill [his] dog and burn [his] house down." The liquor store worker alerted law enforcement after he overheard defendant loudly arguing on the phone and threatening to burn down a house. Defendant returned to Edwards's residence less than 20 minutes later, at which point the doorbell camera recorded a fire igniting in the front window of the home.

A next-door neighbor observed the flame in the living room and "heard a loud screaming from the dog, a hurling cry that [she had] never heard from a dog before." Another witness heard the dog make "an excruciating sound that [he] will never forget." Outside, neighbors saw defendant exit the home and questioned him about Edwards's dog, to which he responded, "F***

the dog. The crackhead stole my car, so I lit it on fire." The neighbors could not enter the home because the fire engulfed the house by that time. Defendant then fled the scene. The first officer on scene also heard the dog's cries but could not enter the home because of the flames. After emergency personnel extinguished the fire, a fire investigator discovered the deceased dog in its crate in the living room, where the fire originated.

After defendant's arrest, a jury convicted defendant as charged. The trial court initially sentenced defendant to serve 180 to 360 months' imprisonment for his arson conviction and a consecutive term of 46 to 180 months' imprisonment for his conviction of killing or torturing an animal. Defendant moved to correct an invalid sentence, challenging the scoring of an offense variable and the imposition of consecutive sentences. The prosecutor stipulated to resentencing, conceding the offense variable scoring error. The trial court resentenced defendant as previously described, reducing the minimum term for the arson conviction to 156 months, and maintaining the imposition of consecutive sentences. Defendant appeals.

## II. ANALYSIS

Defendant contends that the trial court abused its discretion by imposing the sentences for the two offenses consecutively, rather than concurrently. We disagree.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Baskerville*, 333 Mich App 276, 289; 963 NW2d 620 (2020) (quotation marks and citation omitted). In this case, MCL 750.50b(9) expressly authorizes a trial court to order that a sentence imposed for killing or torturing animals "be served consecutively to a term of imprisonment imposed for any other crime including any other violation of law arising out of the same transaction as the violation of this section." Thus, the trial court had statutory authority to impose a consecutive sentence for defendant's violation of MCL 750.50b(5).

When a statute provides the trial court discretion to impose a consecutive sentence, a decision to do so is reviewed for an abuse of discretion, "i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016) (*Norfleet I*). Trial courts must "articulate their rationale for the imposition of each consecutive sentence so as to allow appellate review." *Id*. at 665. When imposing a consecutive sentence, the trial court must "give particularized reasons—with reference to the specific offenses and the defendant." *Id*. at 666. There is a "heavy presumption in favor of concurrent sentencing," and "the 'strong medicine' of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified." *People v Norfleet (After Remand)*, 321 Mich App 68, 73; 908 NW2d 316 (2017) (*Norfleet II*).

In the present case, at the initial sentencing hearing, the trial court stated that defendant's "specific intention to harm that dog . . . provide[d] a justification for the Court to use its discretion in order to make count two consecutive to count one." In addition, the court stated that it was "very concerning" that defendant made the dog "pay" for Edwards wronging defendant. At resentencing, the trial court explained why it reimposed a consecutive sentence:

With regard to the consecutive nature, I do believe that it is appropriate to make it consecutive. I think I expressed it before in talking about the dog and the role of the dog, but I will also supplement by saying that it is the combination of [defendant], his intent, to sacrifice the dog because of his being angry about the car.

So it was his intent that the dog be burned and that was supported by the evidence, along with the fact that the dog was heard by the witnesses to suffer extensively and it is in the presentence investigation report as well. They heard the dog yelping, screaming, and crying with no way out[,] and the dog burned to death.

So the combination for the intent of that to happen and the fact that the dog suffered extreme suffering, I think, is strong medicine. And I am not a Judge who ordinarily—if given the discretion, I normally—it's my practice to impose a concurrent sentence. But I felt so strongly about the role of the dog and the suffering of the dog and the intent of [defendant] that I felt that that was appropriate and that is why I am making the sentences consecutive.

On appeal, defendant contends that the trial court abused its discretion by considering elements of the offense "already contemplated by the offense statute," i.e., the intent to kill or torture the dog, in its rationale for the imposition of consecutive sentences. Defendant argues by analogy that, because a trial court cannot "base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range" under MCL 769.34(3)(b) in a sentencing guideline departure analysis, likewise here the trial court should not have been able to contemplate the elements of the offense in its rationale for consecutive sentencing. For several reasons, we are not persuaded.

First, defendant's analogy breaks down when one compares the statutes in play. The plain language of MCL 750.50b(9), which authorizes the trial court to impose a consecutive sentence, does not expressly prohibit the trial court from considering an element of the offense in deciding whether to do so. MCL 769.34(3)(b), by contrast, specifically addresses the impermissibility of departures based on facts already taken into account in determining the guideline range—thereby constraining the discretion of trial courts to an extent not present here.

Second, defendant fails to cite any authority that prevents trial courts from considering facts related to an element of the offense in justifying the imposition of consecutive sentences. In fact, this Court has previously rejected an argument similar to defendant's in a challenge to consecutive sentencing. In *People v Johnson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362236); slip op at 5, we held that a "trial court did not err by citing factors as the bases for consecutive sentences that were also considered in calculating defendant's sentencing guidelines range." Likewise, in the present case, we conclude that the trial court's consideration of defendant's intent, which was also an element of the offense for which he was convicted, was not error here.

Third, in this case it is clear that the trial court did not base its decision to impose consecutive sentencing solely on an element of the offense. Rather, the trial court expressly stated that it was a *combination* of disturbing facts—defendant's decision "to sacrifice the dog because of his being angry about the car," "his intent that the dog be burned," "the fact that the dog was

heard by the witnesses to suffer extensively . . . yelping, screaming, and crying with no way out," and "the fact that the dog suffered extreme suffering"—that led to the "strong medicine" of consecutive sentencing. The trial court's explanation, which gave "particularized reasons" as required by *Norfleet I*, thus goes well beyond merely relying on an element of the offense.

In this regard, we note that "[t]he purpose underlying consecutive sentencing is to discourage individuals from committing multiple crimes by removing the safety of concurrent sentencing." *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 22. Imposing a consecutive sentence in this case is consistent with that purpose. The record reflects that the dog's death was not merely incidental to the arson; defendant stated his intent to kill Edwards's dog *and* burn down his house, and when confronted by neighbors said "F*** the dog. The crackhead stole my car, so I lit it on fire." Accordingly, sentencing defendant to terms of incarceration beyond what would have been imposed for the arson conviction alone is consistent with the goal of discouraging those who commit arson from committing additional crimes such as the one carried out here.

Finally, we disagree with defendant's assertion that the trial court's explanation did not include particularized reasons specific to the defendant. See *Norfleet I*, 317 Mich App at 666. Specifically, the trial court acknowledged defendant's personal remorse but explained that his history of engaging in dangerous conduct that put people's lives at risk was a pattern that required a harsh sanction. The trial court further explained that although it was understandable why defendant would be upset about Edwards taking his car, it could not be ignored that his response "was to commit a horrific act."

In sum, the record demonstrates that the trial court articulated with particularity its rationale for imposing consecutive sentences and that its decision to depart from the heavy presumption in favor of concurrent sentences was within the range of reasonable and principled outcomes. The trial court, therefore, did not abuse its discretion. See *Norfleet II*, 321 Mich App at 73.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin